**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| Jockey International, Inc.,<br><br>*Plaintiff,*<br><br>v.<br><br>Lamont D. Cooper and Black Jockey Company,<br><br>*Defendants*. | Case No. 1:24-cv-05294-TRJ consolidated with Case No. 25-cv-00811-TRJ |

## <u>JOINT MOTION IN SUPPORT OF ENTRY OF<br>FINAL CONSENT DECREE</u>

Plaintiff Jockey International, Inc. ("Jockey") and Defendants Lamont D. Cooper ("Cooper") and Black Jockey Company ("BJC", and, collectively with Cooper, "Defendants"), respectfully request that the Court enter the proposed consent decree attached to this motion as **Exhibit A** to effectuate the parties' settlement.

### BACKGROUND

On April 4, 2018, Cooper filed a federal trademark application, Serial No. 87863113, in the U.S. Patent and Trademark Office to register the following mark

1

depicted below (the "Black Jockey Mark"):



Jockey has registrations for the following marks:

| Mark | Reg./App. No. |
|---|---|
| (the "1960s Half Jockey Mark") | 0711570 |
| (the "1960s Full Jockey Mark") | 0768840 |

| Mark | Reg./App. No. |
|---|---|
|  (the "2011 Full Jockey Mark") | 4471345 |
|  (the "2011 Composite Jockey Mark") | 4641620 |
|  (the "JOCKEY Seal") | 5984914 |

Jockey opposed registration of the Black Jockey Mark by filing a notice of opposition, Opposition No. 91248336 (the "Opposition") with the Trademark Trial and Appeal Board (the "Board") on May 22, 2019, alleging that the Black Jockey Mark infringed Jockey's rights in the 1960s Half Jockey Mark, the 1960s Full Jockey Mark, the 2011 Full Jockey Mark, the 2011 Composite Jockey Mark, and the Jockey Seal.

3

In the Opposition, Cooper asserted counterclaims, alleging that the Black Jockey Mark did not infringe Jockey's rights, that certain of Jockey's marks were invalid, and that certain of Jockey's marks infringed Defendants' rights in certain marks.

The Board issued an opinion in the Opposition on September 19, 2024, in which the Board found, among other things, that:

- The 1960s Half Jockey mark should be cancelled due to abandonment;

- The 1960s Full Jockey Mark should be cancelled due to abandonment;

- The 2011 Full Jockey Mark should be cancelled as to certain goods due to abandonment;

- The JOCKEY Seal Mark should be cancelled because of a likelihood of confusion;

- Sustained Jockey's opposition to registration of the Black Jockey Mark.

(ECF No. 1-5).

Jockey believes the Board erred in its Order in a number of material respects and, pursuant to 15 U.S.C. § 1071(b), appealed the Board's Order in a civil action before this Court requesting that this Court reverse the Board's Order in part. In addition, Jockey asserted a claim for trademark infringement against Defendants.

Separately, Defendants appealed the Board's Order in a civil action before this Court in Case No. 25-cv-00811-TRJ, seeking a partial reversal of the Board's

Order based on a belief that the Board erred in its Order. In addition, Cooper asserted claims for false designation of origin, common law trademark infringement, violation of Georgia's Uniform Deceptive Trade Practices Act, and violation of Georgia's Law Against Unfair Competition. Defendants' case was consolidated into this case by the Court's August 4, 2025 order. (ECF No. 36).

On May 6, 2025, the parties jointly moved for a court-directed settlement conference and a mediation was scheduled for August 19, 2025, before Magistrate Judge Regina Cannon. (ECF Nos. 30, 31, 33). Although resolution was not reached at the first mediation, the mediation was continued to November 25, 2025 and the settlement conference was held open. (ECF No. 39). Resolution was also not achieved as part of the second mediation, but the mediation was continued to January 22, 2026, and the settlement conference continued to be held open. (ECF No. 41). The third mediation did not result in resolution, but the mediation was continued to May 8, 2026, and the settlement conference remained open. (ECF No. 42). At the fourth mediation on May 8, 2026, and during the continued settlement efforts that followed, the parties agreed to terms resolving the parties' dispute. As part of the parties' settlement, the parties agreed to jointly seek vacatur of the Board's September 19, 2024 Order in its entirety. To achieve that end, the parties agreed to file a motion seeking entry of the proposed consent decree filed in

connection with this motion, the terms of which have been agreed to by each of the parties.

## ANALYSIS

**I.     This Court has authority to order the Board to vacate its non-precedential decision.**

Section 21 of the Lanham Act permits a party dissatisfied with a Board decision to bring a civil action in a federal district court. Relevant to the procedural circumstances here, 15 U.S.C. § 1071 provides that "an applicant for registration of a mark" or a "party to an opposition proceeding" who has not taken an appeal to the United States Court of Appeals for the Federal Circuit may bring a civil suit in federal district court. 15 U.S.C. § 1071(b)(1). The district court may enter a judgment regarding the Board's decision "as the issues in the proceeding require, as the facts in the case may appear." *Id.* The district court's judgment authorizes the Board to "take any necessary action, upon compliance with the requirements of law." *Id.*

The district court's decision and directive to the Board is a mandate that must be followed. "'Administrative agencies [ ] are not free to ignore [a] court's mandates. This 'mandate rule' is sometimes described as part of the inaptly-named 'law of the case doctrine.'" *Bd. of Trs. of the Univ. of Alabama v. Houndstooth Mafia Enters. LLC*, 163 F. Supp. 3d 1150, 1157 (N.D. Ala. 2016) (quoting

*Youghiogheny & Ohio Coal Co. v. Milliken*, 200 F.3d 942, 950 (6th Cir. 1999)).

The mandate rule is a specific application of the "law of the case doctrine"

requiring that "[a] trial court, upon receiving the mandate of an appellate court,

may not alter, amend, or examine the mandate, or give any further relief or review,

but must enter an order in strict compliance with the mandate." *Norelus v. Denny's,*

*Inc.*, 628 F.3d 1270, 1288 (11th Cir. 2010) (quoting *Piambino v. Bailey*, 757 F.2d

1112, 1119–20 (11th Cir.1985)). Thus, the mandate rule requires the Board to

follow this Court's final judgment. *Bd. of Trs. of the Univ. of Alabama*, 163 F.

Supp. 3d at 1157.

**II.    Vacatur of a Board decision is appropriate where "exceptional circumstances" exist.**

Under 28 U.S.C. § 2106, a "court of appellate jurisdiction may affirm,

modify, vacate, set aside or reverse any judgment, decree, or order of a court

lawfully brought before it for review, and may remand the cause and direct the

entry of such appropriate judgment, decree, or order." The basic principle of

§ 2106 also guides a court's review of agency orders. *Bd. of Trs. of the Univ. of*

*Alabama*, 163 F. Supp. 3d at 1157 (quoting *Greater Boston Television Corp. v.*

*F.C.C.*, 463 F.2d 268, 277 (D.C. Cir. 1972)); *see also Env't Def. Fund, Inc. v.*

*Costle*, 578 F.2d 337, 346 n.33 (D.C. Cir. 1978) ("Although 28 U.S.C. § 2106 in

terms applies to review of court orders, it has been understood to identify a general principle of appellate review that is applicable to review of agency orders . . . .").

While not unlimited, "[t]he power to vacate remains vested in an appellate court even if the judgment before it becomes moot." *Major League Baseball Props., Inc. v. Pac. Trading Cards, Inc.*, 150 F.3d 149, 151 (2d Cir. 1998) (citing *Walling v. James V. Reuter Inc.,* 321 U.S. 671, 677 (1944)). And vacatur is appropriate, as here, where there are "exceptional circumstances." *Id.* (citing *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 29 (1994)); *see also Bd. of Trs. of the Univ. of Alabama*, 163 F. Supp. 3d at 1157 (finding exceptional circumstances where both parties wanted a settlement and vacatur was a necessary condition of reaching the same).

In the Eleventh Circuit, when assessing whether exceptional circumstances exist, "courts determine the propriety of granting vacatur by weighing the benefits of settlement to the parties and to the judicial system (and thus to the public as well) against the harm to the public in the form of lost precedent." *Hartford Cas. Ins. Co. v. Crum & Forster Specialty Ins. Co.*, 828 F.3d 1331, 1336 (11th Cir. 2016) (adopting the approach taken in *Major League Baseball Props., Inc. v. Pac. Trading Cards, Inc.*). "The precise application of this approach will vary case by case." *Id.* Exceptional circumstances have been found to exist even when the

decision to be vacated serves as precedent where "the court and the appellee, not the appellant, initiated consideration of settlement; all the parties had a significant interest in vacating the district court's opinion[] and[] that interest outweighed the social value of the precedent;" and where vacatur "was a necessary condition of settlement" because protection of the rights at issue were relevant to potential future litigation; the parties "did not begin their negotiations leading to settlement unprompted," and "settlement would otherwise be impossible." *Quoting first Major League Baseball Props., Inc.*, 150 F.3d at 152 *then Hartford Cas. Ins. Co.*, 828 F.3d at 1336; *see also Bd. of Trs. of the Univ. of Alabama*, 163 F. Supp. 3d at 1160 (granting motion to enforce judgment vacating precedential Board decision).

*Board of Trustees of the University of Alabama v. Houndstooth Mafia Enterprises, LLC* illustrates where vacatur of a Board decision is appropriate because of "exceptional circumstances." After the plaintiffs had unsuccessfully opposed defendant's registration of the HOUNDSTOOTH MAFIA mark before the Board, the plaintiffs appealed the Board's decision, which the Board subsequently designated precedential, to the district court. *Bd. of Trs. of the Univ. of Alabama*, 163 F. Supp. 3d at 1154. The parties subsequently reached a settlement in which, among other things, "all parties acknowledged and agreed that the TTAB's decision . . . should be vacated." For plaintiffs, they "were only willing to settle if

9

the [Board's] 2013 decision was vacated" because they were "repeat players" before the Board and were concerned with the precedential effect of the Board's decision. *Id.* To effectuate the settlement the parties filed a motion for consent judgment asking the district court to vacate the Board's decision which the court granted it. *Id.*

The Board, however, objected to the court's order and sought to intervene, contending among other things that "exceptional circumstances" did not exist. *Id.* at 1158–61. The district court rejected the Board's arguments and found exceptional circumstances existed: "Plaintiffs found themselves in a position where an opponent wished to settle but Plaintiffs could not agree to a resolution absent vacatur of the decision under review. . . . [T]he exceptional circumstances of this case justify the unique requirement of vacatur agreed to by the parties." *Id.* at 1161.

### III. "Exceptional circumstances" exist here warranting vacatur of the Board's decision.

The parties respectfully request that the Court enter the attached proposed consent decree because "exceptional circumstances" exist here, warranting vacatur of the Board's non-precedential decision.

*First,* settlement of the parties' dispute would not be possible without vacatur as both parties have an interest in the Board's decision being vacated. Both parties took issue with aspects of the Board's decision, which is why both parties

filed appeals challenging the Board's decision. Because both parties are interested in restoring rights impacted by the Board's decision, settlement would not be possible absent vacatur as the only other way to achieve that result would be to continue the litigation. Because all of the parties are interested in vacating the Board's decision to restore their respective rights, settlement would not be possible absent vacatur. Accordingly, vacatur is a necessary component of the parties' resolution and restoration of their respective rights. The parties' settlement restores certainty regarding their respective trademark rights and resolves multiple pending claims that otherwise would require substantial discovery, expert testimony, and significant expenditure of judicial and party resources.

*Second*, the settlement is not the result of one party just relinquishing its rights but instead the result of significant, mutual efforts by the parties to resolve the dispute. As set forth in the Background section above, the parties reached a settlement agreement only after engaging in multiple mediation sessions over the course of a year, further supported by additional discussions and negotiations between sessions.

*Finally*, vacatur of the Board's decision is essential to, and indeed a necessary condition of, the parties' resolution of their dispute. For example, Jockey, like the plaintiffs in *Board of Trustees of the University of Alabama*, is a

11

repeat player who regularly seeks to enforce its trademark rights before the Board and therefore cannot agree to resolve this dispute without protecting against the effect of the Board's decision below on those rights. *See Bd. of Trs. of the Univ. of Alabama*, 163 F. Supp. 3d at 1154. Courts have routinely vacated prior decisions where seeking vacatur of a prior order was an essential term of the parties' settlement agreements. *See, e.g.*, *Perrigo Co. v. Merial Ltd.*, No. 1:15-CV-3674-SCJ, 2021 WL 3560950, at *1 (N.D. Ga. Apr. 5, 2021); *United Mins. & Props., Inc. v. Phoenix Ins. Co.*, No. 4:23-CV-00050-WMR, 2024 WL 5656502, at *1 (N.D. Ga. Aug. 29, 2024). Defendants likewise have a substantial interest in vacatur. The Board's decision sustained Jockey's opposition to registration of the Black Jockey Mark and adversely affected Defendants' asserted trademark rights and business interests. Defendants appealed the Board's decision because they believe the Board erred in material respects. Vacatur is therefore necessary to restore the parties to their pre-decision positions and is a material component of the settlement reached by both sides.

These considerations outweigh any potential harm to the public particularly because unlike the TTAB decision at issue in Houndstooth Mafia, the Board's decision here was expressly designated non-precedential, further reducing any public interest in preserving the decision as compared to the substantial benefits

achieved through settlement.. Non-precedential decisions of the Board are not binding decisions. Trademark Trial and Appeal Board Manual of Procedure § 801.03 ("A decision that is not designated as precedential is not binding on the Board, but may be cited for whatever persuasive value it might have."). Thus, the "lost value" of undoing the Board's decision is minimal as the Board's decision only has persuasive value, and it is easily outweighed by the benefits of settlement for the parties, the judicial system, and the public.

## CONCLUSION

In view of the foregoing, the parties respectfully request that the Court grant their joint motion and enter the requested consent decree attached hereto as **Exhibit A** directing vacatur of the Board's decision in Opposition No. 91248336.

This 10th day of June, 2026.

| | |
|---|---|
| */s/ Neil A. Brunetz* | */s/ Stephen M. Katz* |
| Neil A. Brunetz, GA Bar No. 090799 | Stephen M. Katz |
| Matthew A. Nanninga, GA Bar No. 159070 | GA Bar No. 409065 |
| DREW ECKL & FARNHAM, LLP | THE KATZ LAW GROUP, LLC |
| 303 Peachtree Street NE, Suite 3500 | 137 Johnson Ferry Road |
| Atlanta, GA 30308 | Suite 2230 |
| Tel: (404) 885-1400 | Marietta, GA 30068-4949 |
| brunetzn@deflaw.com | Tel:  770.988.8181 |
| nanningam@deflaw.com | smkatz@katz.legal |
| *Attorneys for Plaintiff –* | *Attorneys for Defendants –* |
| *Jockey International, Inc.* | *Lamont D. Cooper and* |
| | *Black Jockey Company* |

13

14

_Johanna M. Wilbert_

Johanna M. Wilbert*
Nathan J. Oesch*
QUARLES & BRADY LLP
411 East Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
Tel: (414) 277-5100
johanna.wilbert@quarles.com
nathan.oesch@quarles.com
*admitted pro hac vice
Attorneys for Plaintiff –
Jockey International, Inc.

_Dayna C. Cooper_

Dayna C. Cooper
(admitted pro hac vice)
COOPER LEGAL, LLC
1 Olympic Place, Suite 900
Towson, MD 21204
Tel:  202.642.5470
Dayna@CooperLegalSolutions.com
Attorneys for Defendants –
Lamont D. Cooper and
Black Jockey Company

14

## CERTIFICATE OF COMPLIANCE

Counsel for Plaintiff hereby certifies that the forgoing has been prepared with one of the font and point selections approved by the Court in LR 5.1(C): Times New Roman (14 point).

This 10th day of June, 2026.

/s/ Neil A. Brunetz

Neil A. Brunetz, GA Bar No. 090799
Matthew A. Nanninga, GA Bar No. 159070
DREW ECKL & FARNHAM, LLP
303 Peachtree Street NE, Suite 3500
Atlanta, GA 30308
Tel: (404) 885-1400
brunetzn@deflaw.com
nanningam@deflaw.com

/s/ Johanna M. Wilbert

Johanna M. Wilbert*
Nathan J. Oesch*
QUARLES & BRADY LLP
411 East Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
Tel: (414) 277-5100
johanna.wilbert@quarles.com
nathan.oesch@quarles.com
*admitted pro hac vice

*Attorneys for Plaintiff Jockey International, Inc.*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day filed **Joint Motion in Support of Entry of Final Consent Decree** with the Clerk of Court, using the CM/ECF system which will automatically send email notification of such filing to the following attorneys of record:

Dayna C. Cooper
COOPER LEGAL, LLC
1 Olympic Place, Suite 900
Towson, MD 21204
Dayna@CooperLegalSolutions.com

Stephen M. Katz
The Katz Law Group, LLC
137 Johnson Ferry Road
Suite 2230
Marietta, GA 30068-4949
smkatz@katz.legal

This 10th day of June, 2026

*/s/ Neil A. Brunetz*

Neil A. Brunetz, GA Bar No. 090799
Matthew A. Nanninga, GA Bar No. 159070
DREW ECKL & FARNHAM, LLP
303 Peachtree Street NE, Suite 3500
Atlanta, GA 30308
Tel: (404) 885-1400
brunetzn@deflaw.com
nanningam@deflaw.com

16

*/s/ Johanna M. Wilbert*
Johanna M. Wilbert*
Nathan J. Oesch*
QUARLES & BRADY LLP
411 East Wisconsin Ave., Suite 2400
Milwaukee, WI 53202
Tel: (414) 277-5100
johanna.wilbert@quarles.com
nathan.oesch@quarles.com
*admitted pro hac vice

*Attorneys for Plaintiff Jockey International, Inc.*

20247417v1
37517-296193

17